In re EXTENDED MARCH 1975 GRAND JURY NO. 655.—(ALLIANCE TO END REPRESSION *et al.*, Petitioners-Appellants, *v.* BERNARD CAREY, State's Attorney, Respondent-Appellee.)

First District (2nd Division)    No. 79-433

Opinion filed May 13, 1980.

Richard M. Gutman, of Chicago, for appellants.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr and Joan S. Cherry, Assistant State's Attorneys, of counsel), for appellee.

William R. Quinlan, Corporation Counsel, of Chicago (Daniel R. Pascale and Peter Fitzpatrick, Assistant Corporation Counsel, of counsel), for *amicus curiae* City of Chicago.

Albert Brooks Friedman, Ltd., of Chicago (Frederick M. Ellis, Jr., of counsel), for *amicus curiae* Michael Randy.

Mr. JUSTICE DOWNING delivered the opinion of the court:

This is an appeal from an order of the circuit court of Cook County denying a petition filed pursuant to section 112—6(b) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1977, ch. 38, par. 112—6(b)), which sought the release of all evidence received by the March 1975 Cook County grand jury No. 655.

The sole issue on appeal is the propriety of the trial court's order.

Appellants in this case are plaintiffs in Alliance To End Repression *et al. v.* Rochford *et al.*, No. 74 C 3268, a case presently pending in the United States District Court for the Northern District of Illinois. Appellants, together with plaintiffs in American Civil Liberties Union *et al. v.* City of Chicago *et al.*, No. 75 C 3295, also presently pending in the district court, petitioned the presiding judge of the criminal division of the circuit court of Cook County, Illinois, for disclosure to them, under a protective order, of all evidence, including transcripts of proceedings, received by the March 1975 Cook County grand jury No. 655. The district court cases are civil class action suits alleging unconstitutional, politically motivated surveillance, harassment, and intimidation by members of the Chicago police department security section in conspiracy with other city and Federal defendants.[1]

The March 1975 grand jury No. 655 was impaneled to investigate allegations of improper gathering and dissemination of intelligence data by members of the security section of the Chicago police department's intelligence division. The grand jury issued a report of its investigation, a copy of which was attached to the petition involved in this case. The report indicated that based upon the evidence presented, which included testimony from 71 witnesses and more than 5,000 pages of subpoenaed documents, the grand jury found that the "* * * Security Section of the Chicago Police Department assaulted the fundamental freedoms of speech, association, press and religion, as well as the constitutional right to privacy of hundreds of individuals." However, the grand jury did not return indictments. The grand jury reasoned that a criminal prosecution of the few against whom indictments could be returned would highlight some disjointed criminal acts rather than present a comprehensive

---

[1] These cases and Chicago Lawyers Committee for Civil Rights Under Law v. City of Chicago *et al.*, No. 76 C 1982, were consolidated in the district court for discovery purposes.

overview of abusive police intelligence activity. The grand jury also found that a number of key witnesses were now deceased and crucial physical evidence had been destroyed. According to the report, the grand jury did forward a sealed list naming 13 Chicago police department officials to the superintendent of the Chicago police department, hoping that appropriate administrative action would be taken. It was the grand jury's belief that its report, together with disciplinary action against the individual police officers and the appropriate civil remedies available to those most directly aggrieved, would serve as a deterrent to others and a foundation upon which to work for the future.

Relying on this report, appellants in their petition alleged that the Federal class actions were the type of actions the grand jury had contemplated as appropriate civil remedies, and because the grand jury expressly deferred to civil litigation, it was essential that the evidence heard by the grand jury be made available to them; that justice requires grand jury evidence regarding police misconduct be released in order to maintain the integrity and credibility of the police; and that the city defendants' resistance to discovery and the destruction of crucial evidence presented specific and compelling needs for the production of the evidence.

A hearing was held on the petition by the chief judge of the criminal division of the circuit court of Cook County, the same judge who had presided over grand jury No. 655. The chief judge pointed out that he had refused to accept the grand jury's report on the basis that it was not authorized by the court and was issued beyond the scope of the grand jury's authority.[2] The judge stressed the sensitivity involved in the proceedings of this grand jury. He stated that many of the police officers feared losing their jobs because of the testimony they might have to give. Potential witnesses came to him and told him certain individuals who did testify had to go back and make a written report of the testimony they had given. This, the judge said, "practically stymied our grand jury and the investigation." To eliminate this intimidation and to insure a constant flow of testimony, the judge imposed a "gag order" prohibiting all witnesses from disclosing their testimony before the grand jury in any manner to any member of the Chicago police department. He stated that as a result of this order and the assurances he gave, witnesses did voluntarily testify before the grand jury. He stated that grand jury proceedings cannot be used to preserve or obtain testimony for use in civil suits. He acknowledged the fact that when an indictment is returned, the witness' testimony before the grand jury can be obtained for the

---

[2] By statute, a grand jury is authorized to make a report as to the conditions and treatment of prisoners in jail. See Ill. Rev. Stat. 1975, ch. 75, par. 26.

purpose of impeachment at trial, but that in this case no indictments had been returned. He pointed out the possibility of reputations being destroyed simply by a revelation of those who testified. He noted that the police officers were still open to censureship in many ways if they were compelled to disclose the testimony they gave. He stated that the rights and privileges of a witness testifying before the grand jury must be weighed against the rights of a person who is instituting a civil suit. Based upon these considerations, the chief judge denied the petition.

This court allowed the state's attorney leave to intervene and file a brief as appellee in this appeal, and allowed amici curiae briefs to be filed by the corporation counsel on behalf of the city of Chicago and by Michael Randy, a former police officer who had testified before the grand jury.

At oral argument, the assistant state's attorney informed this court of the appeal in *Socialist Workers Party v. Grubisic* which at that time had been argued before the Seventh Circuit Court of Appeals and was awaiting decision. Plaintiffs in that case filed a civil rights action in Federal court alleging victimization for their political views by a right-wing, paramilitary organization known as the Legion of Justice in conspiracy with members of the Chicago police department and the 113th Military Intelligence Group of the United States Army. Bernard Carey, a nonparty to the action, was served with a *subpoena duces tecum* requesting him, as State's Attorney, to produce records and transcripts of the March 1975 Cook County grand jury No. 655 proceedings. Carey moved to quash the subpoena. The district court denied Carey's motion and subsequently ordered Carey to produce that portion of the subpoenaed materials he thought should be produced in the public interest and to submit the balance of the materials to the district court. Carey appealed that order on the basis, *inter alia*, that the parties seeking the grand jury evidence failed to make specific requests supported by a requisite showing of particularized need. The Seventh Circuit recently rendered its opinion in *Socialist Workers Party v. Grubisic* (7th Cir. 1980), 619 F.2d 641, stating:

> "We need not at this time reach the issue whether the district court's order is too broad or not broad enough in its scope because we hold that in the circumstances of this case, notions of comity between the state and federal courts require that the plaintiffs first seek disclosure in the state court with supervisory powers over the grand jury." (619 F.2d 641, 643.)

However, the court went on to state that its decision did not give the State courts a veto over disclosure of the materials in the Federal civil rights case, but rather was a preliminary stage designed to forestall unnecessary intrusion by Federal courts in State grand jury proceedings or to ensure

that the State interest in secrecy is thoroughly considered. The court stated that in the event plaintiffs were unsuccessful in the State court, the Federal district court may have to take custody of the grand jury materials and rule on specific requests for disclosure taking into account the need for secrecy developed during the State disclosure proceeding. We do not interpret the language used by the Court of Appeals as a threat to the free exercise of our judgment in this case. Rather, we base our conclusion solely on the record before us and the applicable law.

## I.

In Illinois, the purpose of secrecy surrounding grand jury proceedings is to prevent the escape of those under indictment, to insure the grand jury freedom in its deliberations, to prevent subornation of perjury, to encourage disclosure by witnesses, and to protect the innocent from unwarranted exposure. (*People v. French* (1965), 61 Ill. App. 2d 439, 441-42, 209 N.E.2d 505; *People v. Johnson* (1964), 31 Ill. 2d 602, 605-06, 203 N.E.2d 399.) This court in *French* further stated that "* * * the purpose of secrecy is designed to assure freedom of deliberation of future grand juries, and the participation of future witnesses, as well as to provide these assurances to those who appeared before the instant proceeding." 61 Ill. App. 2d 439, 442.

However, the veil of secrecy surrounding grand jury proceedings is not absolute. Section 112—6(b) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1977, ch. 38, par. 112—6(b)) in relevant part provides:

"Matters occurring before the Grand Jury other than the deliberations and vote of any grand juror may be disclosed when the court, preliminary to or in connection with a judicial proceeding, directs such in the interests of justice or when a law so directs."[3]

The Committee Comments to this section state that a similar provision on secrecy in general is found in the Federal Rules of Criminal Procedure, Rule 6(e). And our supreme court in *People ex rel. Sears v. Romiti* (1971), 50 Ill. 2d 51, 58, 277 N.E.2d 705, *cert. denied sub nom. Hanrahan v. Sears* (1972), 406 U.S. 921, 32 L. Ed. 2d 121, 92 S. Ct. 1778, stated that the Federal Rule was the model for the Illinois provision.

Under Federal law, proceedings before a grand jury are protected against disclosure by the Federal common law policy of secrecy for precisely the same reasons as stated under Illinois law. (*Socialist Workers*

---

[3] We note that Supreme Court. Rule 412(a)(iii) (Ill. Rev. Stat. 1977, ch. 110A, par. 412(a)(iii)) which relates to discovery before trial in criminal cases provides in part that the State shall, upon written motion of defense counsel, disclose to defense counsel "* * * a transcript of those portions of grand jury minutes containing testimony of the accused and relevant testimony of persons whom the prosecuting attorney intends to call as witnesses at the hearing or trial."

*Party v. Grubisic* (7th Cir. 1980), 619 F.2d 641, 644; *Douglas Oil Co. v. Petrol Stops Northwest* (1979), 441 U.S. 211, 219, 60 L. Ed. 2d 156, 165, 99 S. Ct. 1667, 1672-73; *United States v. Procter & Gamble Co.* (1958), 356 U.S. 677, 681-82 n.6, 2 L. Ed. 2d 1077, 1081 n.6, 78 S. Ct. 983, 986 n.6.) This policy of secrecy is reflected in Federal Rule 6(e). However, Rule 6(e)(3)(C)(i) permits disclosure of matters occurring before the grand jury otherwise prohibited by the rule "when so directed by a court preliminary to or in connection with a judicial proceeding." Under this rule, the trial court has discretionary power to permit disclosure when a particularized need exists, such as to impeach a witness, to refresh his recollection, to test his credibility and the like. *United States v. Procter & Gamble Co.* (1958), 356 U.S. 677, 683, 2 L. Ed. 2d 1077, 1082, 78 S. Ct. 983; *Pittsburgh Plate Glass Co. v. United States* (1959), 360 U.S. 395, 399, 3 L. Ed. 2d 1323, 1326, 79 S. Ct. 1237, 1240; *Dennis v. United States* (1966), 384 U.S. 855, 870, 16 L. Ed. 2d 973, 984, 86 S. Ct. 1840, 1849; *United States v. Socony-Vacuum Oil Co.* (1940), 310 U.S. 150, 234, 84 L. Ed. 1129, 1174, 60 S. Ct. 811, 849.

Relying on its decisions in *Dennis* and *Procter & Gamble Co.*, the Supreme Court in *Douglas Oil Co.* formulated a standard for determining when the traditional secrecy of the grand jury may be broken. The court stated:

"Parties seeking grand jury transcripts under Rule 6(e) must show that the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed." 441 U.S. 211, 222, 60 L. Ed. 2d 156, 167, 99 S. Ct. 1667, 1674.

Appellants in the present case argue that the misconduct of police presents a situation which dictates that a disclosure of grand jury transcripts be made in the furtherance of justice, and that the need to maintain public confidence in the police, public officials, constitutes a particularized need. Appellants rely for authority on *People v. French* (1965), 61 Ill. App. 2d 439, 209 N.E.2d 505; *In re Bullock* (D.D.C. 1952), 103 F. Supp. 639; and *In re Special February 1971 Grand Jury* (7th Cir. 1973), 490 F.2d 894.

In *French*, the issue was whether a defendant may obtain a transcript of the testimony of a witness before the grand jury for preparation for the trial. This court held that until a witness speaks on the stand at the trial, his grand jury testimony should remain undisclosed unless he chooses, himself, to disclose what he said or unless there are compelling circumstances which may dictate, in the furtherance of justice, that a disclosure be made. Although no compelling circumstances were found present in that case, the court by dicta gave examples of compelling

circumstances. One example given was misconduct of a public officer, the court citing *In re Bullock* as authority.

*Bullock* involved a proceeding whereby the Board of Commissioners of the District of Columbia sought to have the minutes of a grand jury made available in order to determine if a certain policeman had been guilty of dereliction of duty. After balancing the policy interests in requiring secrecy as opposed to disclosure, the court found that disclosures made before the grand jury by witnesses other than the policeman under investigation were to remain secret. Prior to the disciplinary hearing, the policeman under investigation had been directed by the superintendent of police to answer a questionnaire regarding affiliation or connection with certain illegal operations. The policeman at the disciplinary hearing testified that his answers to this questionnaire may have been incomplete. In ordering disclosure of this particular policeman's grand jury testimony, the court found the policeman's failure to submit completely to a superior's order was a direct rebuke to the public interest, and that in such a case the public interest was superior to the purpose of the secrecy of that policeman's grand jury testimony.

In *In re Special February 1971 Grand Jury*, the other case upon which appellants rely, five policemen appeared before a Federal grand jury investigating allegations of criminal conspiracy and corruption among members of the Chicago police department. Subsequently, these policemen were summoned to appear before the police department's board of inquiry. The superintendent's petition seeking disclosure of the grand jury minutes pertinent to the appearances of these five policemen was granted by the district court. On review, the Seventh Circuit held that under Federal Rule 6(e) the district court did not abuse its discretion in ordering the disclosure. The court reasoned that because maintenance of police integrity and credibility is essential to public confidence, the disclosure of testimony by the policemen to a police board in order to discipline those abusing public offices is a sufficient public interest to override the policy of shielding the grand jury from public scrutiny.

Both the *Bullock* and *In re Special February 1971 Grand Jury* cases differ from the present case in that they involved police board disciplinary actions involving specific individuals. The litigants there could not avail themselves of the benefit of the broad Federal discovery rules, and the evidence disclosed was specifically limited to the named policemen under investigation. In both cases the requests for the grand jury minutes were "structured to cover only material so needed." In the present case, appellants seek disclosure of the entire grand jury file which includes the testimony of 71 witnesses and more than 5,000 subpoenaed documents. Because no indictments were returned by the grand jury, this is not a case where the reasons for secrecy no longer prevail. The fact that the

proceedings before the grand jury have terminated does not, without more, justify the disclosure of its proceedings. (*Douglas Oil Co. v. Petrol Stops Northwest* (1979), 441 U.S. 211, 222, 60 L. Ed. 2d 156, 167, 99 S. Ct. 1667, 1674.) As is evident from the appendix attached to the corporation counsel's amicus curiae brief, appellants have availed themselves of and have had access to extensive pretrial discovery in this matter.[4]

Appellants argue that they have been unable to obtain by pretrial discovery much of the evidence gathered by the grand jury because they do not have the manpower and resources which were available to the grand jury and many of the witnesses have denied wrongdoing or claimed lack of recollection. While the availability of the grand jury transcripts might avoid the delay and substantial costs incurred by Federal civil discovery procedures, this reason is insufficient to allow a breach of grand jury secrecy. (*United States v. Procter & Gamble Co.* (1958), 356 U.S. 677, 682, 2 L. Ed. 2d 1077, 1082, 78 S. Ct. 983; *Corona Construction Co. v. Ampress Brick Co.* (N.D. Ill. 1974), 376 F. Supp. 598, 693.) As was recognized by the Supreme Court in *Procter & Gamble*, broad as the public policy is for wide discovery, the public policy against disclosure of grand jury proceedings is even stronger. That an unknown number of unnamed witnesses denied wrongdoing or have failing memories does not justify the release of the testimony of all 71 witnesses who testified before the grand jury. At oral argument before this court, appellants were unable to explain why the discovery process was not sufficient to at least allow them to make a more structured request for specific material. Appellants here have requested disclosure of the entire grand jury file but have failed to meet their burden of demonstrating the existence of a particularized and compelling need which outweighs the policy of secrecy to merit such broad disclosure.

Appellants argue that the court's decision to deny their petition was premised on its erroneous belief that because no indictments were returned, State and Federal law precluded disclosure of the grand jury proceedings. As indicated in the facts as set forth in this opinion, the record clearly shows that the fact no indictments were returned was but one of several considerations upon which the circuit court based its decision.

Appellants point out for the first time on appeal that portions of the

[4] In its amicus curiae brief, the corporation counsel states that appellants have taken the depositions of 43 policemen and employees of the city of Chicago; that this number does not include the many depositions taken of others not represented by the city of Chicago; that further depositions have been scheduled in the future; that the city of Chicago has and will in the future make available for depositions persons within its control; that appellants have secured answers to voluminous sets of interrogatories; and that the city of Chicago has allowed appellants to read all police intelligence documents of any kind and has furnished copies to them of any documents that are not related to a specific criminal investigation by the police department. These statements have not been refuted by appellants.

grand jury proceedings, *i.e.*, transcripts of the testimony of three witnesses, were made public when attached as an appendix to the defendant's brief in the case of *People v. Stewart* (1978), 66 Ill. App. 3d 342, 383 N.E.2d 1179, *cert. denied* (1979), 441 U.S. 907, 60 L. Ed. 2d 376, 99 S. Ct. 1998. Those transcripts were not in any way relevant to our decision in *Stewart*. It was and still is unknown to us how the copies of those transcripts were obtained. In any event, we know of no authority nor do appellants cite any authority which would allow the disclosure of entire grand jury proceedings when a small fraction of those proceedings has been made public.

Based upon the facts in this case, we cannot find that the circuit court abused its discretion in denying disclosure of the grand jury proceedings. Nor do we think the appellants met the standard set forth by the United States Supreme Court in *Douglas Oil Co.* Accordingly, we affirm the judgment of the circuit court of Cook County.

Affirmed.

PERLIN, P. J., and STAMOS, J., concur.

